2013 BNH 018

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:  Bk. No. 09-12318-BAH
Chapter 7

Melinda Ricketts,
        Debtor

Melinda Ricketts,
        Plaintiff

v.  Adv. Proc. 13-1022-BAH

Bank of America Corporation,
        Defendant

*Joel Jay Rogge*
*Law Office of Joel Jay Rogge*
*Ipswich, Massachusetts*
*Counsel for the Debtor*

*Thomas J. Pappas*
*Primmer Piper Eggleston & Cramer PC*
*Manchester, New Hampshire*
*Counsel for Bank of America*

## MEMORANDUM OPINION

### I.    INTRODUCTION

The Court has before it the Motion to Dismiss Adversary Proceeding (the "Motion") (Doc. No. 25) filed by Defendant Bank of America, N.A. (the "Bank"), and the Objection to Motion to Dismiss Complaint (the "Objection") (Doc. No. 26) filed by Debtor Plaintiff Melinda Ricketts (the "Debtor"). The Bank argues that the Amended Complaint (Doc. No. 20) should be dismissed for a lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a cause of action under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court finds that Count I, Violation of

the Discharge Injunction, is a core proceeding under with 28 U.S.C. § 157(b). The Court finds that Count II, Violation of Implied Covenant of Good Faith and Fair Dealing, is not a core proceeding under 28 U.S.C. § 157(b). The motion to dismiss Count II pursuant to Rule 12(b)(1) is granted. With respect to Count I, the Court finds that the Debtor has met her burden to plead sufficient facts to state a claim that is plausible on its face. Thus, the motion to dismiss Count I pursuant to Rule 12(b)(6) is denied.

## II. JURISDICTION

The Court has authority to exercise jurisdiction over the subject matter of Count I and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a). Federal Rule of Bankruptcy Procedure 7008 requires all adversary complaints to contain a statement "that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge." Fed. R. Bankr. P. 7008(a). This Court's Administrative Order 7008-1 provides: "A complaint . . . shall comply with the pleading requirements of Bankruptcy Rule 7008 and, in addition, shall contain a statement that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy court." AO 7008-1.[1]

Similarly, Federal Rule of Bankruptcy Procedure 7012 requires all responsive pleadings to admit or deny an allegation that the proceeding is core or non-core. "If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge." Fed. R. Bankr. P. 7012(b). AO 7012-1 provides that: "An answer or other responsive pleading shall comply with the requirements of Bankruptcy Rule 7012(b) and, in addition, shall include a statement that the

---

[1] AO 7008-1 went into effect on February 1, 2013. This adversary proceeding was commenced on March 12, 2013. Thus, the Debtor's complaint (Doc. No. 1) and amended complaint (Doc. No. 20) should have contained a statement that the Debtor did or did not consent to the entry of final judgment.

party does or does not consent to the entry of final orders or judgment by the bankruptcy court." AO 7008-1.

Here, neither the complaint nor the amended complaint contain a statement that the Debtor consents or does not consent to the entry of final orders or judgments in this matter. However, the Debtor states in both the complaint and amended complaint that this is a core proceeding. Thus, the Court will infer that the Debtor has consented to the entry of final orders or judgments. Likewise, neither of the Bank's dismissal motions contains a statement that the Bank does not consent to the entry of final orders or judgments by the bankruptcy judge. In the absence of a statement indicating whether or not the Bank consents, the Court will infer that the Bank has consented to the entry of final orders or judgments with respect to Count II.

## III. FACTUAL BACKGROUND

On or about June 1, 2001, Debtor bought improved real property located on Plum Island in Newburyport, Massachusetts (the "Property"). At the time the deed was recorded, an Enforceable Schedule for Compliance with Title 5 and Easement for Sewer and Water Connection with the Board of Health for the City of Newburyport (the "Easement") was also recorded. The Easement provided that the Debtor could use the existing water system for five years, but if after that the Debtor had not connected to the city water and sewer system, the Newburyport Board of Health could take all necessary actions required to bring the Property into compliance.

The Debtor lived in the Property between 2001 and 2006. On or about November 8, 2006, the Debtor granted a mortgage on the Property to the Bank's predecessor in interest,

securing a loan for $235,000.[2] On October 8, 2008, the then-mortgagee commenced foreclosure proceedings in the Massachusetts Land Court, prompting the Debtor to file a petition for relief under chapter 13 of the Bankruptcy Code on February 9, 2009. The Debtor was not represented by counsel in that case, and it was dismissed for failure to file necessary schedules and a chapter 13 plan. Order Dismissing Case, Case No. 09-10388-MWV. The Debtor also alleges that during 2009, while it was unoccupied, the Property was vandalized, and its copper plumbing was stolen.

On June 24, 2009, the Debtor commenced another pro se bankruptcy case, this time under chapter 13 of the Bankruptcy Code. A month later, she converted her case to a chapter 11 case, at which time she obtained counsel. On Schedule A, the Debtor listed the Property as having a value of $309,500, encumbered by secured claims of $470,011. On Schedule D, she listed BAC Home Loans/Countrywide as holding a first mortgage on the Property in the amount of $229,321.

Nearly a year later, on June 11, 2010, the Debtor filed her disclosure statement. In it, she stated that she entered into a purchase and sale agreement to sell the Property for $165,000. Contemporaneously with the disclosure statement, the Debtor filed a Motion to Sell Property Free and Clear of Liens (the "Motion to Sell") (Doc. No. 98). The Bank filed an objection to the Motion to Sell, asserting that it was the first mortgage holder; that it was owed $290,362.07; and that the $165,000 proposed sale price did not reflect the fair market value of the Property, and could not be approved over its objection. The Motion to Sell was ultimately—albeit conditionally—approved by the Court after Bank and the Debtor reached an

---

[2] The original mortgagee was Mortgage Electronic Registration System, Inc. (MERS), as nominee for Home Loan Center, Inc., d/b/a Lending Tree Loans, which was then assigned to Countrywide Home Loans, Inc. on September 4, 2008. The mortgage was then assigned to Bank of America on November 1, 2012.

4

agreement that the sale could occur if and only if "BAC Home Loans Servicing, LP agrees to the terms of the sale." (Doc. No. 117).

The contemplated sale never occurred, and the case converted to a chapter 7 case on September 27, 2011. On October 25, the Debtor filed her Statement of Intent indicating her intent to surrender the Property to the Bank. The Debtor received her discharge on December 28. On June 20, 2012, the Chapter 7 Trustee filed a Notice of Abandonment for the Property, stating that the Property was encumbered by liens in excess of its estimated value, leaving no equity for the estate.

The case was poised to be closed when the Debtor filed the Complaint on March 12, 2013. She alleges that although there is a signed and approved purchase and sale agreement for the Property, the Bank continued to refuse to approve the short sale. The Debtor states that the property has suffered continued loss in value due to the deterioration of the physical premises, but that the buyer is still willing to purchase the property for $165,000.

Moreover, she alleges that since October 2011, the Newburyport Board of Health has been taking action to enforce the terms of the Easement. The Property has still not been connected to the city water and sewer. She alleges that she was under the impression that the Bank would be addressing the Easement issue, and that the Board of Health had spoken to the Bank and was also led to believe that the Bank would be responsible for the necessary work. Am. Compl. ¶ 15. However, she alleges, the Board of Health has nonetheless filed an application for a criminal complaint against the Debtor for failure to comply with the Easement. She alleges that her sole source of income is Social Security Disability Income, and that she is without the ability to replace the vandalized plumbing and to connect to the municipal water and sewer. Further, she alleges that according to an opinion by a structural

5

engineer dated November 9, 2009, the Property is in such disrepair that, in his opinion, it would not be practical or cost effective to repair the damage, and that the property should be demolished.  Am. Compl. ¶ 22.

The Amended Complaint[3] contains two counts: that by refusing to negotiate the terms of a short sale and "holding the Property hostage to payment of an unattainable mortgage note balance," the Bank is violating the discharge injunction (Count I); and violating the implied covenant of good faith and fair dealing in the Note and Mortgage held by the Bank (Count II).

The Bank filed the Motion to Dismiss[4] on June 21, 2013.  It seeks dismissal of the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  It argues that this post-bankruptcy discharge dispute is not a core proceeding under 28 U.S.C. § 157, and that the claims are not sufficiently "related to" the prior bankruptcy for this Court to have jurisdiction.  Further, it argues, the Debtor cannot point to a provision of the contract between the parties that would require the Bank to consent to a short sale or to foreclose on the Debtor's timeframe.  The Debtor counters that Bank of America is violating the discharge injunction by refusing to either foreclose or agree to the proposed sale, citing to the First Circuit cases of Canning v. Beneficial

---

[3] The complaint that is the subject of the Motion to Dismiss and at issue in this opinion is the Amended Complaint (Doc. No. 20).  After the Court's hearing on May 20, 2013, the Court entered an order directing the Debtor to file an amended complaint on or before June 7, 2013.  According to the Debtor, the Amended Complaint "corrected the dates on which the mortgage at issue was granted and assigned, removed the withdrawn counts for abuse of process, negligent infliction of emotional distress, and intentional infliction of emotional distress, added reference to a structural engineers [sic] report supporting the Plaintiff's contention that there is no reasonable likelihood that the [Property] will increase in value over time, reworked the count for violation of the discharge injunction include arguments made at the hearing of the motion to dismiss, added a count for violation of the implied covenant of good faith and fair dealing inherent in all Massachusetts contracts . . . and added a request for release of the mortgage."  Mot. for Leave to File 1st Am. Compl. (Doc. No. 21).
[4] The Motion to Dismiss at issue is the motion to dismiss the Amended Complaint, which was filed after the Court's hearing.

Me., Inc. (In re Canning), 706 F.3d 64 (1st Cir. 2013), and Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 462 F.3d 13 (1st Cir. 2006).

### IV.    DISCUSSION

There are two issues before the Court.  First, whether the Court has subject matter jurisdiction over a claim for violation of a discharge injunction and for breach of the implied warranty of good faith and fair dealing in a contract under Massachusetts law, where a chapter 7 debtor has received a discharge and reopened a bankruptcy case in order to file an adversary proceeding.  And second, whether the Debtor has stated a claim that is plausible on its face that the Bank's refusal to approve a short sale or to foreclose on the Property constitutes a violation of the discharge injunction.  The Court shall address each issue in turn.

A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, provides that a party may move to dismiss for "lack of subject-matter jurisdiction."  Here, although the Motion to Dismiss is styled as one under Rule 12(b)(1), the argument both in the Memorandum of Law and at the hearing frame the issue as whether the Court has "core" or "non-core" jurisdiction.

Bankruptcy courts have only the jurisdiction permitted them under the Constitution and given to them by Congress.  See Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995).  The party who invokes federal court jurisdiction has the burden of establishing that jurisdiction does in fact exist.  Steele v. Ocwen Fed. Bank (In re Steele), 258 B.R. 319, 321 (Bankr. D.N.H. 2001)(citing Hoar v. Prescott Park Arts Festival, Inc., 39 F. Supp. 2d 109, 110 (D.N.H. 1997)).  Courts should, where the essential facts are not in dispute, accept all well-pleaded facts as true

7

and draw all reasonable inferences in favor of the plaintiff.  Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363-64 (1st Cir. 2001); see also In re Vienneau, 410 B.R. 329, 333 (Bankr. D. Mass. 2009).

28 U.S.C. § 1334 provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11," and "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(a) & (b).  Section 157 of title 28 provides that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred by the district court." 28 U.S.C. § 157(b)(1).  U.S. District Court for the District of New Hampshire Local Rule 77.4(a) refers all matters arising under title 11 or arising in or related to a case under title 11 to this Court.

> Cases that 'arise under' title 11 involve causes of action[] created or determined by a statutory provision of the bankruptcy code.  'Arising in' proceedings do not fall under an express right created by the bankruptcy code, but would have no existence outside of the bankruptcy.  Actions 'arising under' title 11 or 'arising in' a case under title 11 are referred to as 'core' proceedings . . . .  Bankruptcy courts may still have jurisdiction over proceedings under the court's 'related to' jurisdiction, if the actions could have an effect on the administration of the bankruptcy estate.  'Related to' proceedings are referred to as 'non-core proceedings.'

Maroun v. N.Y. Mortg. Co. (In re Maroun), 427 B.R. 197, 199-200 (Bankr. D.N.H. 2010) (citations omitted).

Courts carefully examine whether they have jurisdiction over adversary proceedings that involve the post-discharge conduct of secured creditors.  In Steele, the court held that it could not exercise 'related to' jurisdiction where a chapter 13 debtor, after receiving his discharge, reopened his bankruptcy case to bring actions for violation of the discharge

8

injunction and under the state fair debt collection statute and the federal Fair Debt Collection Practices Act. 258 B.R. at 320. The Court found that although it had jurisdiction over the violation of the discharge injunction count, the fair debt collection practices counts were not core proceedings because they were not causes of action that were created or determined by Bankruptcy Code provisions, nor were they based on rights that could not be pursued outside of the bankruptcy context.

Next, the Steele court turned to whether it had "related to" jurisdiction, and found that the appropriate inquiry was "if the outcome could conceivably have any effect on the estate being administered in bankruptcy." Id. at 322 (citing Pacor v. Higgins, 743 F.2d 984 (3d Cir. 1984)) ("The Pacor test was recognized by the First Circuit . . . and has been applied consistently by courts within the First Circuit."); see also Celotex Corp., 514 U.S. at 308 n.5 (adopting the Pacor test). Examining the fair debt collection practices causes of action, the court found that they did not fall within the court's related-to jurisdiction because any recovery would inure only to the debtor, not the estate. The Steele court held that "the fact that the allegations serving as the basis of the claim for violation of the discharge injunction, over which the [c]ourt has jurisdiction, are intertwined with the facts giving rise to [the fair debt collection claims] does not alter this result. 258 B.R. at 322.

Here, Count I (violation of the discharge injunction) is a core proceeding. The Motion does not specifically assert that the Court does not have jurisdiction over Count I. However, because the Motion generally asks the Court to "dismiss the Complaint" for lack of subject matter jurisdiction, the Court will address the issue of whether it has jurisdiction under 11 U.S.C. §§ 105(a) and 524(a) to enforce the discharge injunction by its contempt power. In Bessette v. Avco Financial Services, Inc., the First Circuit held that, since section 105 provides

the bankruptcy court with statutory contempt powers in addition to whatever inherent contempt powers the court may have, "the bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages . . . when creditors have engaged in conduct that violates § 524." 230 F.3d 439, 445 (1st Cir. 2000); see also In re Schlichtmann, 375 B.R. 41, 89-90 (Bankr. D. Mass. 2007) ("A contempt proceeding to enforce the discharge injunction is a core proceeding within the meaning of 28 U.S.C. § 157(b), and therefore the bankruptcy court may enter appropriate judgment in the matter."). Thus, the Court finds that to the extent that Bank of America argues that this Court has no jurisdiction over Count I, that argument is without merit.

The Court turns to Count II, which alleges a violation of the implied covenant of good faith and fair dealing. The Bank argues that because rejecting the short sale offer and "not yet" foreclosing are actions authorized by the mortgage itself, the breach of the implied covenant "could and should" exist outside of the bankruptcy context and is therefore not a core proceeding. Further, the Bank argues that there is no related-to jurisdiction because the claim arose after the Debtor received a discharge, after the chapter 7 trustee abandoned the Property, and after the Court had closed the Debtor's case.[5] The Debtor does not address the Rule 12(b)(1) argument in her Memorandum in Support of her Objection.

The facts here are very similar to those in Steele. In both cases, the debtors received their discharges and had further dealings with secured creditors whose liens survived the bankruptcy proceeding, and brought actions in the bankruptcy court against those creditors related to post-discharge conduct. In Steele, the court held that it did not have jurisdiction over the causes of action that were not core proceedings, even though there were entwined facts

---

[5] The Bank asserts that the Debtor's case was closed, see the Motion to Dismiss, but a review of the record shows that although there was a discharge issued and the trustee had filed a Final Report and Account after distribution, the case was never closed.

giving rise to both the violation of the discharge injunction claim and the fair debt collection practices claims, because there was no possible benefit to the bankruptcy estate.

Although the facts giving rise to the breach of the implied covenant count are the same as those for the violation of the discharge injunction, the former count has no potential impact on the Debtor's estate. The Debtor has already received her discharge; her trustee had filed his Final Report and Account; the U.S. Trustee had filed his notice of no objections, and the Debtor's case was all but closed. Thus, any benefit received from Count II would go to the Debtor personally. Even taking all facts in the light most favorable to the Debtor, there is no alleged impact on the administration of the reopened case. The Debtor has neither argued nor established any specific reason or reasons why jurisdiction is appropriate for Count II. The violation of the implied covenant of good faith and fair dealing is not a core proceeding. There is no effect on the administration of the bankruptcy estate that would give the Court related-to jurisdiction. Thus, Count II of the Amended Complaint is dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

B.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable in bankruptcy by Fed. R. Bankr. P. 7012(b), provides that complaints may be dismissed for failure to state a claim upon which relief can be granted. To survive a motion to dismiss pursuant to Rule 12(b)(6), the Supreme Court has made clear that a plaintiff must allege claims that contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557 (2007)). To determine whether to grant a motion to dismiss, courts face a "context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." Iqbal, 556 U.S. at 664-65. Plaintiffs must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., see also Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (finding that dismissal is appropriate when plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief").

The "principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007) (quoting Grogan v. Garner, 498 U.S. 279, 286 (1991)). One of the primary methods of affording debtors their fresh start is the discharge injunction of section 524(a), which may be enforced by bankruptcy courts. Id.; Canning, 706 F.3d at 67-68; Pratt, 462 F.3d 13. "Generally, a discharge in bankruptcy relieves a debtor from all pre-petition debt, and section 524(a) permanently enjoins creditor actions to collect discharged debts." Bessette, 230 F.3d at 443-44. However, "Despite its broad scope, the discharge injunction does not enjoin a secured creditor from recovering on valid prepetition liens, which, unless modified or avoided, ride through bankruptcy unaffected and are enforceable in accordance with state law." Canning, 706 F.3d at 69.

While there is no express remedy for violation of the discharge injunction, a debtor may enforce the discharge injunction through contempt proceedings. Schlichtmann, 375 B.R. at 95; see also Bessette, 230 F.3d at 444-45 ("While it is true that the considerable discretion conferred on courts sitting in bankruptcy by § 105 is not unlimited, in that it is not a 'roving commission to do equity,' a court is well within its authority if it exercises its equitable powers to enforce a specific code provision, such as § 524. Thus, §105 does not itself create a private right of action, but a court may invoke § 105(a) 'if the equitable remedy utilized is

12

demonstrably necessary to preserve a right elsewhere provided in the Code, so long as the court acts consistent with the Code and does not alter the Code's distribution of other substantive rights.'" (internal citations omitted)).

In determining whether there has been a violation of the discharge injunction, the court employs an objective standard and examines the facts of each case specifically. Where the contested action is not expressly in violation of the injunction, the "core issue is whether the creditor acted in such a way as to coerce or harass the debtor improperly." Pratt, 462 F.3d at 19. As in other contempt actions, the plaintiff must demonstrate a violation by clear and convincing evidence. Langston v. Johnston, 928 F.2d 1206 (1st Cir. 1991). The injunction itself must be clear and unambiguous as to whether the conduct being questioned is prohibited by the terms of the injunction. In re Dunn, 324 B.R. 175, 179 (Bankr. D. Mass. 2005).

To find civil contempt of the discharge injunction sufficient to justify a sanction in the form of compensatory damages and attorneys' fees, a debtor must demonstrate by clear and convincing evidence that the defendant's conduct meets two criteria: (1) the defendant committed an act that violated the discharge with general intent to commit the act; and (2) the defendant had knowledge of the discharge order. Schlichtmann, 375 B.R. at 95.[6]

The First Circuit is clear that in determining whether a creditor's refusal to take title or release a lien is a discharge injunction violation, "each case must . . . be assessed in the context of its particular facts." Canning, 706 F.3d at 73 (quoting Pratt, 462 F.3d at 19). Courts have looked at the nature of the defendant's actions; the potential impact on the debtor; the status of the property; whether the defendant was willing to work with the debtor to resolve the

---

[6] To find criminal contempt and award punitive sanctions, the court must find not only the requirements for civil contempt are met, but also, by proof beyond a reasonable doubt, find that the creditor acted in bad faith, with knowledge of the wrongfulness. Id. at 95-96.

situation; and whether maintaining the property has caused an undue burden on the debtor. See Canning, 706 F.3d 64; Pratt, 462 F.3d 13; In re Cormier, 434 B.R. 222 (Bankr. D. Mass. 2010).

In Pratt, the First Circuit found that GMAC's post-discharge refusal to release its pre-petition lien on the debtors' car was a violation of the discharge injunction because the debtors were objectively being coerced into paying the prepetition lien. After the debtors received their discharge, GMAC refused to release its lien on the debtors' car until they paid the remaining balance on the prepetition car loan. The First Circuit reversed and remanded the affirmation of the bankruptcy court's determination that GMAC did not violate that chapter 7 discharge injunction. Basing its decision on the preclusive effect of Maine law, the First Circuit found that GMAC's refusal to release its lien was objectively coercive because, according to state law, the inoperable vehicle could not lawfully be junked unless GMAC released its lien. Pratt, 462 F.3d at 19. Further, the First Circuit held that although a secured creditor would not necessarily be in violation of the discharge injunction by insisting on in rem rights, GMAC had nevertheless not identified any compelling reason that would override a finding of bad faith. Id. at 20 & n.5 (suggesting that GMAC could have arranged for adequate protection of its interest, but did not).

In In re Cormier, a Massachusetts Bankruptcy Court explicates that Massachusetts law does not compel mortgagees to take possession of property that has been surrendered under chapter 13 of the Bankruptcy Code. 434 B.R. at 231. In Cormier, the debtors sought an order forcing the mortgagee to accept a deed-in-lieu or to foreclose on the property immediately, even though the chapter 13 was still pending and no plan had been confirmed. The mortgagee did not refuse to foreclose in the future; it refused at that point in the proceeding. The Cormier court looked to Pratt for the proposition that in the usual case, a creditor can treat surrendered

property according to its discretion, as long as it acts consistently with the security agreement and non-bankruptcy law. However, the Cormier court distinguished its case from that in Pratt, finding no evidence that the mortgagee had taken any action that created the practical effect of denying rights to the debtors because there was no confirmed plan, and relief from the automatic stay had not yet been granted. Id. at 232-33.

      The leading case in the First Circuit on whether refusal to release or foreclose upon a prepetition lien is a violation of the discharge injunction is In re Canning. In that case, the debtors filed a chapter 7 petition and sought to surrender their residence. When the defendant-mortgagees refused to foreclose or take title, the debtors filed a complaint asserting a violation of the discharge injunction. The bankruptcy court, relying on Pratt, found that there was no violation of the discharge injunction. It reasoned that the lender's refusal to take possession could have been motivated by the fluctuations in real estate value and noted that the lender did not simply require payment in full but suggested a short sale or voluntary settlement. 706 F.3d 64, 68 (quoting the bankruptcy court's observation that "although the Code provides a discharge of personal liability for debt, it does not discharge the ongoing burdens of owning property"). The Bankruptcy Appellate Panel for the First Circuit affirmed the bankruptcy court on the same reasoning. The First Circuit subsequently affirmed. Distinguishing Canning from Pratt, it ruled that the absence of the "pay in full" conditional release and the lender's "willingness to negotiate a palatable solution for all involved," meant that there was not a similar "picture in which a secured creditor cornered the debtors between a rock and a hard place." Id. at 71-72 (adding that "[t]he Cannings . . . invoke the 'fresh start' to indirectly validate the decision to abandon their residence. They do so without providing any evidence that the residence posed an undue burden on them after their bankruptcy discharge.").

15

Here, the Bank argues that because nothing in Massachusetts law or the Bankruptcy Code presently compels it to accept the short sale offer or to foreclose on the Property, the Debtor has failed to state a claim upon which relief can be granted.  The Bank cites to Mass. Gen. Laws ch. 260 § 33, which provides that the power of sale shall not be exercised more than five years after the maturity date of the mortgage, as the only time limit on its right to foreclose.  It argues that the Debtor is therefore unable to force the Bank to foreclose sooner just because the Debtor would like to surrender the property.

The Bank also distinguishes the instant case from Pratt, arguing that case turned on the fact that the car was worthless, and that no legitimate reason existed for the creditor's refusal to release the lien, making it coercive.  Here, the Bank asserts that it has not attempted to collect the debt and that the property continues to have substantial value.  The Bank argues that to allow the claim for violation of the discharge injunction to go forward would "convert the protection of the discharge injunction into a broad doctrine whereby a discharged debtor has the right to dictate the terms of foreclosure, despite being the breaching party."  Mot. at 12.

The Debtor argues that this case is more similar to Pratt than to Canning.  Although both Canning and this case involve loans secured by a perfected mortgage on property that exceed the value of the real property, debtors who chose to surrender the properties, and mortgagees who have declined to foreclose, the Debtor distinguishes Canning by the assertion that the Bank has refused to negotiate, rather than suggesting a short sale or other voluntary agreement.  Additionally, she distinguishes between the two subject properties. In Canning, the property was habitable and stood to gain value as the real estate market recovered. Here, she alleges that the property is in such bad repair, as evidenced by the structural engineer's demolition recommendation, that there is no chance for recovery.  Finally, the Debtor points

16

out that there is no argument in Canning that the debtors could not pay for the incidentals of ownership, just that they sought to walk away from the property. Here, the Debtor faces complicated criminal allegations, is on a fixed income, and alleges that she does not have the means to remedy the Easement violation.

The Court finds that the Debtor has met her burden to show facts that, when given all favorable inferences, demonstrate a plausible claim for relief. The facts here are more similar to Pratt than to Canning. While the Bank correctly states that there is generally no affirmative duty to discharge its lien or to foreclose on the Debtor's schedule, its refusal to take action has had a coercive effect on the Debtor, similar to that in Pratt. The Bank's refusal to accept the terms of the proposed short sale and refusal to take any responsibility for the remediation of the Easement violation forces the Debtor into a position where in order to avoid criminal prosecution, she must incur major expenses to remediate or repair the Property in order to bring it into compliance with the Easement. Thus, the Debtor is stuck between the proverbial rock and a hard place, as envisioned by Pratt. Taking all facts in the Complaint as true, the Bank's actions have had the effect of coercing the Debtor. Thus, the Motion to Dismiss Count I of the Amended Complaint pursuant to Rule 12(b)(6) is denied.

As the Court has found that it does not have subject matter jurisdiction over Count II, it need not reach the argument that Count II should be dismissed for failure to state a claim upon which relief can be granted.

### V. CONCLUSION

For the reasons set forth in this opinion, the Court finds that it does not have jurisdiction over Debtor's claim for damages from breach of the implied covenant of good faith and fair dealing contained in the Mortgage held by the Bank, and therefore the Motion to Dismiss

17

pursuant to Rule 12(b)(1) is GRANTED as to Count II. The Court finds that the Debtor has met her burden to plead sufficient facts that, when taken favorably, support a claim for relief for violation of the discharge injunction that is plausible on its fact. Thus the Motion to Dismiss pursuant to Rule 12(b)(6) is DENIED as to Count I.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   December 23, 2013                /s/ Bruce A. Harwood
                                         Bruce A. Harwood
                                         Chief Bankruptcy Judge